**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| MIA NICOLE FEDELI | : | |
| 3116 Welsh Road | : | |
| Philadelphia, PA 19136 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | CASE NO.: |
| | : | |
| GREATER PHILADELPHIA YOUNG | : | |
| MEN'S CHRISTIAN ASSOCIATION | : | |
| d/b/a GREATER PHILADELPHIA | : | |
| YMCA | : | |
| 400 Fayette St., Ste 250 | : | |
| Conshohocken, PA 19428 | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendant. | : | |
| | : | |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.      This action has been initiated by Mia Nicole Fedeli (hereinafter referred to as "Plaintiff," unless indicated otherwise) against the Greater Philadelphia Young Men's Christian Association d/b/a Greater Philadelphia YMCA (hereinafter referred to as "Defendant"). Plaintiff asserts violations of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq.*), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" - 42 U.S.C. § 1981), the Americans with Disabilities Act, as Amended ("ADA" - 42 U.S.C. §§ 12101 et. seq.), the Pennsylvania Human Relations Act ("PHRA"), the Philadelphia Fair Practices Ordinance ("PFPO"), and Pennsylvania common law. Plaintiff contends she was subjected to discriminatory and retaliatory mistreatment while employed by Defendant (as explained *infra*) and then unlawfully terminated.

**JURISDICTION AND VENUE**

2.    This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. State claims asserted herein are proper under this Court's ancillary or supplemental jurisdiction to hear state claims arising out of the same common nucleus of operative facts as those set forth in Plaintiff's federal claims.

3.    This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4.    Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this District because actions underlying this case occurred in this District, and Defendant is deemed to reside where it is subject to personal jurisdiction (rendering venue appropriate for multiple reasons).

5.    Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and dual-filing her Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

6.    Plaintiff has properly exhausted her administrative remedies regarding her PHRA and PFPO claims by dual-filing her Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and by waiting at least one year since the filing before asserting her PHRA and PFPO claims.

**PARTIES**

7.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8.      Plaintiff is an adult female residing at the above-captioned address.

9.      The Greater Philadelphia Young Men's Christian Association d/b/a Greater Philadelphia YMCA is a Christian non-profit organization that serves as a community center, youth club, and sports facility, with headquarters at the above-captioned address.

10.     At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

11.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12.     Plaintiff was employed by Defendant for approximately eight (8) months, from on or about January 29, 2024, until her unlawful termination (set forth in more detail *infra*) on or about October 2, 2024.

13.     Plaintiff was employed as the Before and After School Site Director/Manager of Defendant's Juniata Park Academy location at 801 E. Hunting Park Avenue, Philadelphia, PA 19124.

14.     Plaintiff's job duties included managing the After School Enrichment ("ASE") program, Defendant's after-school program for children from kindergarten through 8th grade across the Philadelphia School District.

3

15.     Plaintiff originally reported to the District Team Leader, Dominique Robinson Coleman (Black, hereinafter "Coleman"), and Coleman's Assistant Manager, Jordan Thomas (Black, hereinafter "Thomas").

16.     After Coleman's termination in or about July or August of 2024 (discussed in more detail *infra*), Plaintiff reported directly to Thomas, who became the District Team Leader in Coleman's place.

17.     At all times throughout her employment with Defendant, Plaintiff was a hard-working employee who performed her job duties well.

### -Race Discrimination-

18.     Plaintiff is an adult Caucasian (White) female and one of the only Caucasian employees at Defendant's Juniata Park Academy location.

19.     The majority (if not all) of Defendant's upper management in the Greater Philadelphia area at the time of her employment with Defendant were Black (African American).

20.     Throughout Plaintiff's employment with Defendant, while under the supervision of Thomas, Plaintiff was subjected to a hostile work environment through disparate and discriminatory treatment, including derogatory race-related comments, as a result of her race and/or for being non-Black. These comments were made in Plaintiff's presence by Thomas and other Black employees, including but not limited to Dolores Richardson (Black, hereinafter "Richardson). By way of example, but not intended to be an exhaustive list:

    a.   Thomas routinely spoke to Plaintiff in a rude and condescending way, and regularly talked down to her, unlike Plaintiff's Black co-workers;

    b.   Shortly after Plaintiff's hire, while on a phone conversation with Coleman and Thomas, Thomas advised Coleman that Plaintiff was a "white cracker," and that Thomas wanted her "white ass fired" because Plaintiff purportedly could not

perform her job duties. When Coleman responded that Thomas' directly racist comments were inappropriate, Thomas became belligerent. Shortly thereafter, Defendant terminated Coleman, and Thomas became Plaintiff's supervisor;

c. Richardson commented that Plaintiff had a "nice butt," and that the same was "normal for you [Plaintiff] being Italian, but not normal for the way you [Plaintiff] look;"

d. Plaintiff was advised she does not tan in the sun like the Black employees because of her fair skin;

e. Thomas commented that she was Plaintiff's superior because she has a Master's degree from an all-Black college and is in an all-Black Ph, D. program solely for being Black, while no such race-based programs or colleges would ever be available to Plaintiff solely for her being "White";

f. Shortly after Plaintiff's hire, a Black Caribbean female food services individual for the school district cursed and screamed at Plaintiff, referring to her as a "white bitch" and threatened to kill her simply because Plaintiff was working on an additional food program to lessen food waste and provide more food for children who rarely got full meals at home.  Plaintiff complained of the same to Coleman and Thomas, but her concerns were not properly addressed;

g. Every time Thomas or Richardson brought in a new Black employee (they only hired Black employees during Plaintiff's employment), they would comment to Plaintiff that "this is how this place is supposed to be run";

h. Richardson, in conversation with Thomas and Plaintiff, blatantly stated that Plaintiff was a "bad worker" and "poor only child, coming from a different [ethnic] background than we do"; and

i. About one month before Plaintiff's unlawful termination, Thomas and another Black employee asked Plaintiff to guess their races; when Plaintiff attempted to guess, Thomas once again called Plaintiff a "cracker."

21. Plaintiff objected to the aforementioned instances of race discrimination and disparate treatment by Thomas and Richardson to Human Resources (HR") on multiple occasions, but her concerns were ignored, and they continued to subject her to increased levels of hostility and animosity because of her race.

22. Unlike her Black co-workers, Plaintiff avers she was also set up to fail and issued pretextual admonishment and discipline for manufactured and/or nonsensical reasons.

23. For example, following Plaintiff's complaints of race discrimination, Plaintiff was disciplined for allegedly failing to have active National Sex Offender Registry ("NSOR") clearance for an employee hired during her tenure, Robert Pride (Black, hereinafter "Pride"), which was completely untrue.

24. Pride had been transferred from another one of Defendant's locations in or about July of 2024, unbeknownst to Plaintiff, who only found out that Pride was hired when he reported to work on his first day.

25. As soon as Plaintiff became aware of Pride's employment with Defendant, she diligently called the NSOR hotline at least three (3) times to obtain his NSOR clearance; each time she called, NSOR confirmed that Pride's clearance was active, and his previous supervisor's signature on it was still valid.

26. Plaintiff then reached out to Pride's former supervisor, Aniya Williams (Black, hereinafter "Williams") to obtain Pride's clearance documents, but Williams refused to forward any of Pride's clearance documents, falsely claiming that she did not have them or that they did not exist.

27.      Despite both the existence of Pride's clearance documents and Williams' refusal to provide them, Plaintiff diligently obtained new clearance documents for Pride, which Defendant failed to acknowledge.

28.      Because Defendant failed to accept any NSOR documentation for Pride, Pride worked 64 hours over 3 weeks of Defendant's summer program without being paid before Thomas removed him from the schedule and terminated him, which Defendant pretextually blamed on Plaintiff.

### -Actual/Perceived/Record of Disability Discrimination-

29.      In addition to the race discrimination and retaliation that Plaintiff was subjected to by Thomas and other Black employees, Plaintiff was also treated unfairly because of her disabilities.

30.      Plaintiff has and continues to suffer from ADA-qualifying disabilities, such as ADHD (and its associated conditions, complications and symptoms).

31.      Plaintiff informed Defendant of her disabilities on her job application.

32.      Additionally, during her job interview with Coleman, Plaintiff verbally informed Coleman of her ADHD, to which Coleman responded that Defendant was looking to "check that box" – inferring that Defendant was interested in hiring people with disabilities to fill a certain demographic.

33.      At all relevant times hereto, Thomas was also aware of Plaintiff's disabilities as Plaintiff had provided paperwork detailing her ADHD to Coleman when she was initially hired and shared the scope and nature of the same with Thomas verbally in or about late March 2024, over a phone call in which Thomas was raising her voice and cursing at Plaintiff.

34.    Specifically, Plaintiff advised Thomas that her hostility, yelling, and derogatory speech was exacerbating her ADHD, as it can cause a fight of flight response or "shut down," for individuals with ADHD.

35.    Thomas then stated to Plaintiff that she also has ADHD, as if it was no big deal and Plaintiff should deal with it.

36.    As a result of her aforesaid health conditions, Plaintiff suffered from anxiety, difficulty focusing, and fidgeting, which (at times) limited her ability to perform some daily life activities, such as focusing, sleeping, and working (among other daily life activities).

37.    Despite her aforementioned health conditions, however, Plaintiff was able to perform her job duties well.

38.    Nonetheless, Thomas showed clear, visible contempt for and frustration with Plaintiff's disabilities beginning in or around August of 2024, when she began repeatedly complaining that Plaintiff was a "bad" employee and alleging that Plaintiff had "attitude problems" ostensibly because of her ADHD.  Plaintiff verbally explained to Thomas the nature of her ADHD, which involved her asking detailed questions regarding her job duties (to better understand as a result of her ADHD), after Thomas began to berate her; however, Thomas did not cease making the aforesaid discriminatory comments.

39.    Defendant also discriminatorily and retaliatorily assigned Plaintiff to tasks that exacerbated her ADHD. For example:

   a. Thomas and Coleman assigned Plaintiff to pick up a payment card in Conshohocken, which was approximately an hour away from Plaintiff's worksite via roads with severe traffic. This task was the responsibility of either Coleman or Thomas, not Plaintiff, and the long drive, combined with severe traffic, were known stressors that exacerbate Plaintiff's ADHD; Plaintiff complained to Coleman that

this trip exacerbated her ADHD and that she could not be at work in Philadelphia and in Conshohocken at the same time (which was expected), but her concerns were never addressed;

b. Thomas frequently yelled, cursed at, and insulted Plaintiff, or allowed other staff members to do the same, which is also known to exacerbate ADHD symptoms by causing extreme stress, sensory overload and the activation of the fight-or-flight response; and

c. Defendant assigned Plaintiff to tasks without providing her with proper instruction; lack of structure is known to exacerbate ADHD symptoms, which Plaintiff clearly enunciated.

40. On or about September 10, 2024, about one month before her termination, Plaintiff also suffered a work-related injury to her finger/hand.

41. While Plaintiff was assisting a child in peeling an orange for an afternoon snack, half of the nail of the thumb on her right hand (her dominant hand) was torn off because the orange was hardened due to being stale and partially frozen.

42. Plaintiff was in severe pain and was bleeding, which frightened the children who witnessed the injury, but because she cared about her job and the children in the program who depended on her, she dressed the wound with a bandage and returned to work.

43. Plaintiff later visited the Emergency Room ("ER") for her injury, where her medical provider informed her of the following:

a. The injury resulted in damage to the muscle, nerves, and nailbed of her right thumb;

b. She was eligible for Worker's Compensation; and

c. She must not return to work for another 2 days to prevent the wound from becoming infected/passing along an infection to the students.

9

44. As a result of her work-related injuries/serious health conditions, Plaintiff lost all sensation in the affected section of her right thumb, which has not returned as of the filing of this complaint.

45. Plaintiff thereafter reported her injury on or about September 10, 2024, to Thomas via email after returning home from the ER and provided Thomas with a doctor's letter indicating that she could not return to work for the next 2 days (a reasonable accommodation under the ADA).

46. Thomas was vocally displeased with Plaintiff's need to take two days off, disregarding the risk of infection that Plaintiff faced if she returned to work during those two days.

47. Plaintiff thereafter applied for worker's compensation ("WC") benefits through Defendant as soon as she returned to work. However, Plaintiff's claim was denied, as Defendant's management reported to their WC carrier that the aforesaid injury was caused by a purported preexisting disease and/or disability of Plaintiff's.

48. Defendant's management's aforesaid allegation that Plaintiff had a preexisting disease and/or disability is completely false and outright discriminatory.

49. Following her work-related injury, Thomas further accused Plaintiff of being intoxicated in the presence of the children as another excuse to deny her WC claim and required Plaintiff to provide a list of the prescription medicines she was taking, including those for her ADHD and resulting insomnia, inferring that these medications and/or her disabilities may have impaired her.

50. To be clear, Plaintiff does not drink alcohol and has never been under the influence of any impairing prescription medications while at work, and Defendant's assertion otherwise was directly discriminatory and retaliatory.

10

### -Retaliation (Including Termination)-

51.    As a result of the foregoing instances of race and disability discrimination and retaliation, Plaintiff filed formal written complaints with Defendant's HR department, including 3 complaints from September 10, 2024, through September 26, 2024, stating that she was being bullied and harassed by Thomas and Richardson because of her race and disabilities (ADHD), among other things. However, her concerns were ignored.

52.    Instead, Defendant abruptly terminated Plaintiff by phone on or about October 2, 2024, advising her only that Defendant was "separating [Plaintiff] from [her] contract with them."

53.    When Plaintiff asked why she had been terminated, she was informed that Defendant's HR had purportedly received too many complaints about her; however, she had never been informed of any alleged HR complaints leading up to her termination.

54.    Tellingly, Defendant then provided a conflicting/shifting reason(s) for its termination of Plaintiff in its Position Statement during the EEOC process, stating for the first time that Plaintiff had purported performance concerns.

55.    Defendant's shifting/conflicting reason(s) for Plaintiff's termination are clear evidence of pretext.[1]

56.    Rather, there is no doubt that Plaintiff's race and serious health conditions were motivating and/or determinative factors in the termination of her employment by Defendant as she

---

[1] *See, e.g.*, *Zelinski v. Pennsylvania State Police,* 108 Fed. Appx. 700, 707 (3d Cir.2004) (emphasis added); *see also Bourara v. N.Y. Hotel Trades Council & Hotel Ass'n of N.Y. City, Inc., Emple. Ben. Funds*, No. 20-3092, 2021 U.S. App. LEXIS 31269, at *4 (2d Cir. Oct. 19, 2021) (citing *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013)) (same); *Siegel v. Alpha Wire Corp.*, 894 F.2d 50, 55 (3d Cir.1990)(emphasis added) (holding plaintiff can demonstrate pretext by showing that a "defendant's proffered reason is 'merely fabricated justification for discriminatory conduct ···"either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is ***unworthy of credence***"").

11

had been terminated in very close proximity (just one week) following her most recent complaints of race and disability discrimination, hostile work environment, and retaliation.

57.    Plaintiff claims and therefore avers that she was subjected to discrimination, a hostile work environment, and retaliation as a result of her (1) race; (2) actual/perceived/record of disabilities; (3) in retaliation for her requested accommodations; (4) in retaliation for her expressed complaints of unfair treatment as a result of her race and disabilities; and (5) in retaliation for filing a worker's compensation claim for her work-related injuries.

58.    Plaintiff also believes and therefore avers that her race and disabilities were motivating and/or determinative factors in the termination of her employment by Defendant.

## COUNT I
## Violations of Title VII
**([1] Racial Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

59.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

60.    During Plaintiff's employment with Defendant, she was subjected to discrimination, retaliation, offensive slurs, and a hostile work environment through disparate treatment and pretextual admonishment, and discipline as outlined *supra* because of her race.

61.    Plaintiff objected to/complained of the aforementioned instances of race discrimination and disparate treatment by Defendant's management, but her concerns were ignored.

62.    Plaintiff was then abruptly terminated, on or about October 2, 2024, for completely pretextual reasons.

63.    Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, pretextual discipline, retaliation, and ultimately terminated because of her race and/or her objections to/complaints of race discrimination.

12

64.    Plaintiff therefore also believes and avers that her race was a motivating and/or determinative factor in Defendant's decision to terminate her employment.

65.    The adverse actions taken against Plaintiff as outlined herein constitute unlawful discrimination and retaliation under Title VII.

### COUNT II
### Violations of the Pennsylvania Human Resources Act ("PHRA")
### ([1] Racial Discrimination; [2] Retaliation; and [3] Hostile Work Environment)

66.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

67.    Plaintiff properly exhausted her administrative remedies regarding her PHRA claims because she timely filed a charge of discrimination with the PHRC (by dual-filing her claims with the EEOC) and the charge has been pending for at least one year.

68.    The aforesaid allegations also constitute violations of the PHRA. Thus, Plaintiff's PHRA claims mirror the claims set forth in Count I.

### COUNT III
### Violations of the Philadelphia Fair Practices Ordinance ("PFPO")
### ([1] Racial Discrimination; [2] Retaliation; and [3] Hostile Work Environment)

69.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

70.    Plaintiff properly exhausted her administrative remedies regarding her PFPO claims because she timely filed a charge of discrimination with the PHRC, and the charge has been pending for at least one year. *See e.g. Vandegrift v. City of Phila.*, 228 F. Supp. 3d 464, 482-83 (E.D. Pa. 2017) (dual-filing of charges of discrimination with the EEOC and the Pennsylvania Human Relations Commission satisfied the Philadelphia Ordinance exhaustion requirement).

71.    The aforesaid allegations also constitute violations of the PFPO. Thus, Plaintiff's PFPO claims mirror the claims set forth in her previous claims.

## COUNT IV
## Violations of Title VII of 42 U.S.C. Section 1981
**([1] Racial Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**

72.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

73.     During Plaintiff's employment with Defendant, she was subjected to discrimination, retaliation, offensive slurs, and a hostile work environment through disparate treatment and pretextual admonishment, and discipline as outlined *supra* because of her race.

74.     Plaintiff objected to/complained of the aforementioned instances of race discrimination and disparate treatment by Defendant's management, but her concerns were ignored.

75.     Plaintiff was then abruptly terminated, on or about October 2, 2024, for completely pretextual reasons.

76.     Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, pretextual discipline, retaliation, and ultimately terminated because of her race and/or her objections to/complaints of race discrimination.

77.     Plaintiff also believes and therefore avers that but for her race, she would not have been terminated from her employment by Defendant.

78.     The adverse actions taken against Plaintiff as outlined herein constitute unlawful discrimination and retaliation under Section 1981.

## COUNT V
## Violations of the Americans with Disabilities Act, as Amended ("ADA")
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;
[3] Hostile Work Environment; and [4] Wrongful Termination)**

79.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14

80.   Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities.

81.   Plaintiff kept Defendant's management informed of her serious medical conditions and need for medical treatment and other accommodations.

82.   Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendant; however, Plaintiff did require some reasonable medical accommodations at times.

83.   Plaintiff requested reasonable accommodations from Defendant including but not limited to time off from work to care for and treat her work-related injuries/serious health conditions.

84.   Plaintiff was terminated from her employment with Defendant on or about October 2, 2024, for completely pretextual reasons.

85.   Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, and retaliation because of: (1) her actual/perceived/record of disabilities; (2) her requested medical accommodations (set forth *supra*); and (3) her expressed complaints of unfair treatment as a result of her aforesaid health conditions.

86.   Plaintiff also believes and therefore avers that her serious medical conditions were motivating and/or determinative factors in the termination of her employment by Defendant.

87.   These aforesaid actions constitute violations of the ADA.

**COUNT VI**
**Violations of the Pennsylvania Human Relations Act ("PHRA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**[3] Hostile Work Environment; and [4] Wrongful Termination)**

88.   The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

89.     Plaintiff properly exhausted her administrative remedies regarding her PHRA claims because she timely filed a charge of discrimination with the PHRC (by dual-filing her claims with the EEOC) and the charge has been pending for at least one year.

90.     The aforesaid allegations also constitute violations of the PHRA. Thus, Plaintiff's PHRA claims mirror the claims as set forth in Count V.

**COUNT VII**
**Violations of the Philadelphia Fair Practices Ordinance ("PFPO")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**[3] Hostile Work Environment; and [4] Wrongful Termination)**

91.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

92.     Plaintiff properly exhausted her administrative remedies regarding her PFPO claims because she timely filed a charge of discrimination with the PHRC, and the charge has been pending for at least one year. *See e.g. Vandegrift v. City of Phila.*, 228 F. Supp. 3d 464, 482-83 (E.D. Pa. 2017) (dual-filing of charges of discrimination with the EEOC and the Pennsylvania Human Relations Commission satisfied the Philadelphia Ordinance exhaustion requirement).

93.     The aforesaid allegations also constitute violations of the PFPO. Thus, Plaintiff's PFPO claims mirror the claims set forth in her previous claims.

**COUNT VIII**
**Violations of Pennsylvania Common Law**
**(Worker's Compensation Retaliation)**

94.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

95.     Upon information and belief, Plaintiff was terminated in substantial part for making claims for worker's compensation benefits and/or seeking worker's compensation benefits and/or for her work-related injuries (as discussed *supra*).

16

96.     It is against Pennsylvania's public policy for an employee to be terminated for making worker's compensation claims and/or seeking worker's compensation benefits. *See Shick v. Shirey,* 552 Pa. 590, 716 A.2d 1231 (1997); *Rothrock v. Rothrock Motor Sales, Inc.*, 584 Pa. 297, 883 A.2d 511, 516 (2005).

97.     The temporal proximity and retaliatory animus between Plaintiff's claims for worker's compensation and her termination creates an inference that her termination was in retaliation for making such claims. These actions as aforesaid constitute wrongful termination in Pennsylvania.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

C.     Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress, pain, suffering, and humiliation);

E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.     Plaintiff is to receive a trial by jury as requested in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: July 19, 2026

18

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Mia Nicole Fedeli | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| | : | |
| Greater Philadelphia Young Men's Christian Association : | | NO. |
| d/b/a Greater Philadelphia YMCA | | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (x )

| | | |
|---|---|---|
| 7/20/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

10/2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: __Defendants place of business__

---

***RELATED CASE IF ANY:***  Case Number:_____  Judge:_____

1.   Does this case involve property included in an earlier numbered suit?                                              Yes ☐

2.   Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?   Yes ☐

3.   Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4.   Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same   Yes ☐
individual?

5.   Is this case related to an earlier numbered suit even though none of the above categories apply?   Yes ☐
If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.**   ***Federal Question Cases:***

☐  1.   Indemnity Contract, Marine Contract, and All Other Contracts)
☐  2.   FELA
☐  3.   Jones Act-Personal Injury
☐  4.   Antitrust
☐  5.   Wage and Hour Class Action/Collective Action
☐  6.   Patent
☐  7.   Copyright/Trademark
☐  8.   Employment
☐  9.   Labor-Management Relations
☒  10.  Civil Rights
☐  11.  Habeas Corpus
☐  12.  Securities Cases
☐  13.  Social Security Review Cases
☐  14.  Qui Tam Cases
☐  15.  Cases Seeking Systemic Relief ***see certification below***
☐  16.  All Other Federal Question Cases. *(Please specify)*:_____

**B.**  ***Diversity Jurisdiction Cases:***

☐  1.   Insurance Contract and Other Contracts
☐  2.   Airplane Personal Injury
☐  3.   Assault, Defamation
☐  4.   Marine Personal Injury
☐  5.   Motor Vehicle Personal Injury
☐  6.   Other Personal Injury *(Please specify)*:_____
☐  7.   Products Liability
☐  8.   All Other Diversity Cases:  *(Please specify)*_____
_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒    Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐    None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

FEDELI, MIA NICOLE

**DEFENDANTS**

GREATER PHILADELPHIA YOUNG MEN'S CHRISTIAN ASSOCIATION D/B/A GREATER PHILADELPHIA YMCA

**(b)** County of Residence of First Listed Plaintiff Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Pharmaceutical Slander Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | Liability ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 340 Marine Injury Product ☐ 345 Marine Product Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | Liability **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle ☐ 371 Truth in Lending | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | Product Liability ☐ 380 Other Personal | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | ☐ 360 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | Injury ☐ 385 Property Damage | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | ☐ 362 Personal Injury - Product Liability | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment ☐ 510 Motions to Vacate | | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Sentence | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 245 Tort Product Liability | Accommodations ☐ 530 General | | 26 USC 7609 | Agency Decision |
| ☐ 290 All Other Real Property | ☒ 445 Amer. w/Disabilities - ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of |
| | mployment **Other:** | ☐ 462 Naturalization Application | | State Statutes |
| | ☐ 446 Amer. w/Disabilities - ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation - Transfer ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); Title VII (42USC2000); Section 1981 (42USC1981)
Brief description of cause:
Violations of the ADA, Title VII, Section 1981, PHRA, PFPO and PA Common Law.

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P. **DEMAND $** CHECK YES only if demanded in complaint: **JURY DEMAND:** ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions):* JUDGE _____ DOCKET NUMBER _____

DATE 7/20/2026 SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____